FARMERS INSURANCE GROUP, Plaintiff-Appellant, *v.* BRENDA NUDI, Defendant-Appellee.

First District (2nd Division)   No. 81—2094

Opinion filed July 20, 1982.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stanley J. Davidson and Thomas M. Hamilton, of counsel), for appellant.

Law Offices of John L. Cifelli & Associates, Ltd., of Chicago (Luciano Panici, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, Farmers Insurance Group (Farmers) brought a declaratory judgment action seeking a determination that Brenda Nudi (Brenda) was not entitled to uninsured motorist benefits under the insurance policy owned by her husband, Raymond Nudi (Raymond). Brenda responded, and both parties then moved for judgment on the pleadings pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45). Brenda prevailed, and Farmers appealed. The sole issue presented for our review is whether interspousal tort immunity precludes Brenda's claim against Farmers for uninsured motorist benefits under Raymond's policy.

For the reasons which follow, we affirm.

On August 20, 1978, Brenda sustained injuries when a motorcycle operated by Raymond on which she was a passenger left the road. On October 17, 1979, Brenda sued Raymond alleging that his negligent operation of the motorcycle caused her injuries. This lawsuit was subsequently dismissed with prejudice, the court holding that interspousal tort immunity barred Brenda's action against Raymond. Ill. Rev. Stat. 1979, ch. 40, par. 1001.

Following the dismissal of her lawsuit Brenda brought a claim against Farmers for uninsured motorist benefits under Raymond's policy. Under the uninsured motorist clause in the policy, Farmers agreed:

> "To pay all sums which the owner or operator of an uninsured motor vehicle *would be legally responsible to pay* as damages to the insured because of bodily injury sustained by the insured caused by accident, and arising out of the ownership, maintenance, or use of such uninsured motor vehicle." (Emphasis added.)

Farmers conceded that because of a household exclusion provision in the policy, Raymond was considered an uninsured motorist as to any accident which injured a family member. Nevertheless, Farmers denied Brenda's claim for uninsured motorist benefits and filed a declaratory judgment action. The company contended that the uninsured motorist benefits under Raymond's policy were not payable unless the owner-operator of the vehicle (Raymond) was "legally responsible to pay" damages to the claimant (Brenda); that interspousal tort immunity barred Brenda's action against Raymond; and that because interspousal immunity barred Brenda's lawsuit against Raymond, Raymond was not legally responsible to pay damages to her and, consequently, neither was Farmers. The trial court rejected Farmers' argument, and Farmers now presents the same argument to this court.

At issue in the instant case is the nature of the interplay of interspousal tort immunity and uninsured motorist insurance. A brief historical review of the interspousal tort immunity doctrine as it has developed in Illinois appears to be in order.

In 1953 the Illinois legislature amended "An Act to revise the law in relation to husband and wife" to provide that "neither husband nor wife may sue the other for a tort to the person committed during coverture." (Now codified at Ill. Rev. Stat. 1979, ch. 40, par. 1001.) The effect of the amendment was to reestablish what had been the common law rule of interspousal tort immunity. In interpreting the amendment the Illinois Supreme Court construed the immunity as a

substantive bar to personal injury litigation between spouses. (See *Wartell v. Formusa* (1966), 34 Ill. 2d 57, 60, 213 N.E.2d 544; *Heckendorn v. First National Bank* (1960), 19 Ill. 2d 190, 193, 166 N.E.2d 571.) In *Heckendorn* the court found that the intent of the amendment was to "prevent a cause of action" for torts committed during coverture "from coming into being."

Recently, in a case similar to the one before us, the Illinois Supreme Court held that a third-party insurance company cannot rely upon interspousal tort immunity as a defense to an action brought by one spouse seeking to recover for injuries under the other spouse's uninsured motorist provision. (*Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, 396 N.E.2d 528.) The court stated that "the effect of the 1953 amendment was not to destroy the cause of action of the injured spouse, but to confer immunity on the tortfeasor spouse, which like a defense based upon the statute of limitations can be waived by the defendant spouse." (*Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, 390.) *Allstate* represents a departure from the way in which the court previously construed the interspousal tort immunity doctrine. The immunity is now seen as a procedural, not a substantive, bar to actions between spouses. *Wirth v. City of Highland Park* (1981), 102 Ill. App. 3d 1074, 430 N.E.2d 236.

■ The import of the procedural/substantive distinction is that where the immunity is regarded as a substantive bar, it prevents a cause of action from accruing. A third party may therefore invoke the immunity as a defense to an action by the injured party. (See *Markham v. State Farm Mutual Automobile Insurance Co.* (10th Cir. 1972), 464 F.2d 703 (applying Oklahoma law); *Guillot v. Travelers Indemnity Co.* (La. App. 1976), 338 So.2d 334.) Where, as in Illinois, the immunity is regarded as a procedural bar, it merely precludes enforcement of a remedy. Procedural immunity is personal to the spouse and does not inure to the benefit of third parties. *Hettel v. Rye* (1972), 251 Ark. 868, 475 S.W.2d 536; *DeLuca v. Motor Vehicle Accident Indemnification Corp.* (1966), 17 N.Y.2d 76, 268 N.Y.S.2d 289, 215 N.E.2d 482; Annot., 73 A.L.R.3d 632, 651-53 (1976), and cases cited therein.

In *Allstate* the wife and daughter of the insured were injured as a result of the insured husband's negligent operation of his automobile. The wife sued the insurer directly for uninsured motorist benefits. The uninsured motorist provision in *Allstate* stated that:

> "Allstate will pay all sums which the insured *** *shall be legally entitled to recover* as damages from the owner or operator of an uninsured automobile ***." (Emphasis added.)

Allstate's position parallelled the position taken by Farmers in the

instant case. Allstate argued that the language of its policy denied uninsured motorist benefits to claimants who were not "legally entitled to recover" from the insured. Since interspousal tort immunity barred the wife's tort claim against her husband (the insured), Allstate contended that she was not "legally entitled to recover" from him and, therefore, that she was not able to recover under her husband's uninsured motorist provision.

After a review of authorities from other jurisdictions, the *Allstate* court concluded "that recovery had been permitted when the claimant shows conduct on the part of the tortfeasor spouse which would entitle claimant to recover damages even though a defense available to the tortfeasor would defeat actual recovery." (*Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, 389.) The court ruled that interspousal tort immunity was personal to the spouse and was unavailable to a third party such as the insurer. As a consequence, the insurer could not raise this defense to avoid paying the claimant spouse.

The *Allstate* court then looked to the insurance contract itself. The court interpreted the words "legally entitled to recover" to mean:

> "*** that the claimant must be able to prove the elements of her claim necessary to entitle her to recover damages. That the tortfeasor uninsured motorist in an action brought against him might be in a position to invoke a defense of limitation or some form of statutory immunity is relevant to the question of the right to enforce payment, but does not affect the claimant's legal entitlement to recovery." (*Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, 390.)

Finally, the *Allstate* court found that in executing the insurance contract, it could not have been the intent of the parties "that the [family] exclusion [clause] invoke the uninsured motorist coverage and at the same time preclude recover by the injured spouse on the basis of statutory interspousal immunity." *Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, 391.

*Allstate* differs from the instant case only in regard to the language of the respective uninsured motorist provisions. In *Allstate* the insurance contract provided that the claimant was entitled to uninsured motorist benefits only if she "would be legally entitled to recover from the insured." In the instant case the Farmer's policy states that the company is liable for uninsured motorist benefits only if the insured "would be legally responsible to pay *** damages" to the claimant. While Farmers argues that this difference in language is substantive, we consider it to be semantic.

Essentially Farmers' argument is that by virtue of the language of the uninsured motorist provision of Raymond's policy the company "stands in the shoes" of its insured, Raymond. Under this theory the defenses available to Raymond would inure to Farmers, and the company could assert the defense of interspousal tort immunity to deny Brenda's claim. As our foregoing discussion indicates, however, interspousal immunity is, by its nature, personal to the spouse and is unavailable as a defense to third parties. We do not believe that the nature of interspousal tort immunity can be transformed by the language of an insurance policy. Brenda's action here is a direct contract action against Farmers, and the inability of one spouse to recover against the other in tort has no applicability. See *Allstate Insurance Co. v. Elkins* (1978), 63 Ill. App. 3d 62, 381 N.E.2d 1.

Farmers relies heavily on a portion of the *Allstate* opinion in which our supreme court discussed a Missouri appellate court case, *Noland v. Farmers Insurance Exchange* (Mo. App. 1967), 413 S.W.2d 530. In *Noland* the Missouri court held that interspousal tort immunity barred the wife's claim for uninsured motorist benefits under her husband's policy where the policy contained the same language as that contained in the policy now before us. In distinguishing *Noland*, the *Allstate* court stated that "the distinction between a policy provision for payment of sums which the insured '*shall be legally entitled to recover*' and one which provides for payment of those sums which the uninsured motorist '*would be legally responsible to pay*' is readily apparent, and *we do not find Nolan[d] persuasive*." (Emphasis added.) *Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, 390.

While we recognize that the facts in *Noland* are similar to those in the instant case, we note that Missouri law regards tort immunity as a *substantive* bar to actions between spouses. (*Oates v. Safeco Insurance Co. of America* (Mo. 1979), 583 S.W.2d 713; *Edwards v. State Farm Insurance Co.* (Mo. App. 1978), 574 S.W.2d 505; *Noland v. Farmers Insurance Exchange*.) In Missouri, therefore, the defense of interspousal tort immunity inures to the benefit of third parties while in Illinois it does not. Thus, Missouri's interspousal tort immunity doctrine differs from ours, and accordingly, we find, as did our supreme court, that *Noland* is unpersuasive.

█ In our view the *Farmers* language (legally responsible to pay) and the *Allstate* language (legally entitled to recover) merely represent different verbalizations of the scope of the respective uninsured motorist provisions. We find no substantive differences between the *Allstate* language and the language in the instant case. In accordance with *Allstate* we affirm the trial court's judgment that in-

terspousal tort immunity does not bar Brenda's claim against Farmers for uninsured motorist benefits under Raymond's policy.

Affirmed.

STAMOS, P. J., and DOWNING, J., concur.